SHAWN N. ANDERSON
Acting United States Attorney
CLYDE LEMONS, JR.
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 17-00017 |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' TRIAL BRIEF**<br>**Trial: May 23, 2017 – 10:00 a.m.**<br>**Judge: Frances Tydingco-Gatewood** |
| SHAWN JOHNSON, | **Chief Judge** |
| Defendant. | |

# **TABLE OF CONTENTS**

I.   Introduction .................................................................................................................. 1

II.  Case Posture ................................................................................................................ 1

III. Facts the Government Intends to Prove at Trial ........................................................ 1

IV.  Charges and Related Issues......................................................................................... 4

   A. Possession with Intent to Distribute Methamphetamine........................................... 4

V.   Anticipated Evidence................................................................................................... 4

   A. Ricardo Leon Guerrero .............................................................................................. 4

   B. Jimmy L. Green ......................................................................................................... 5

   C. Leo Diaz..................................................................................................................... 5

   D. Roseanna Castro........................................................................................................ 5

   E. Jeremiah Cruz ............................................................................................................ 6

   F. Annecia T. Martin...................................................................................................... 7

VI.  Evidentiary and Other Trial Issues ............................................................................ 8

   A. Defendant's Statements ............................................................................................. 8

   B. Photographs............................................................................................................... 9

   C. Duplicates .................................................................................................................. 9

   D. Chain of Custody ....................................................................................................... 9

   E. Expert Witnesses...................................................................................................... 10

VII. Conclusion ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Cox v. United States*, 447 U.S. 908 (1980) ................................................................................ 9

*Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993) ........................................................ 10

*People of the Territory of Guam v. Ojeda*, 758 F.2d 403 (9th Cir. 1985) ..................................... 9

*United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980) ...................................................... 9

*United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) ................................................ 9

*United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985) ................................................... 9

*United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980) ................................................ 9

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) ........................................................... 10

*United States v. Harrington*, 923 F.2d 1371 (9th Cir. 1991) ..................................................... 10

*United States v. Solorio*, 669 F.3d 943 (9th Cir. 2012) ............................................................. 10

*United States v. Stewart*, 420 F.3d 1007, 1021 n.13 (9th Cir. 2005) ........................................... 9

**Statutes**

21 U.S.C. § 841 .............................................................................................................................. 4

**Other Authorities**

Ninth Circuit Manual of Model Criminal Jury Instructions No. 9.15 (2016) ................................ 4

**Rules**

Fed. R. Crim. P. 16 ........................................................................................................................ 8

Fed. R. Evid. 801 ........................................................................................................................... 8

Fed. R. Evid. 804 ........................................................................................................................... 8

Fed. R. Evid. 901 ..................................................................................................................... 9, 10

Fed. R. Evid. 1003 ......................................................................................................................... 9

1    **I.     Introduction**

2    The United States submits this brief in compliance with the Court's Scheduling Order

3    entered on March 15, 2017. (ECF No. 7). This case is set for jury trial on May 23, 2017. The

4    Government's trial brief sets forth the basic facts the Government intends to prove at trial, and

5    addresses legal and evidentiary issues the Government anticipates arising at trial.

6    **II.    Case Posture**

7    The grand jury returned a True Bill[1] on March 8, 2017 charging the defendant Shawn

8    Johnson with the offense of Possession with Intent to Distribute Methamphetamine.

9    No pretrial motions have been filed in this case.

10   **III.   Facts the Government Intends to Prove at Trial**

11   On March 10, 2015, federal and local law enforcement officers assembled as part of the

12   United States Marshals Service (USMS) Violent Reduction Operation. The USMS team had

13   planned to execute a Superior Court of Guam arrest warrant issued for the defendant.[2] At

14   approximately 6:35 a.m., the USMS team arrived at the defendant's residence in Barrigada.

15   USMS Task Force Officer (TFO) Ricardo Leon Guerrero arrived at the defendant's residence

16   and was met by the defendant's grandfather, Mr. Johnson. TFO Leon Guerrero informed Mr.

17   Johnson that he had an arrest warrant for the defendant and asked Mr. Johnson if he knew the

18   defendant's whereabouts. Mr. Johnson indicated that he was not sure if the defendant was home

19   and that if the black Lexus was not there, the defendant may not be there. TFO Leon Guerrero

20   reminded Mr. Johnson that the last time an arrest warrant had been issued for the defendant, the

21   defendant was home even though the black Lexus was not at the residence. TFO Leon Guerrero

22   received consent from Mr. Johnson to search for the defendant inside of the residence.

---

[1] ECF No. 1.
[2] The arrest warrant was for a probation violation.

Investigators began looking through the residence and noticed the defendant's bedroom door was locked. TFO Leon Guerrero was present when Customs Officer Jimmy Green asked for and received consent from Mr. Johnson to breach the defendant's bedroom door. Inside of the bedroom were the defendant and an individual named Jenna Crisostomo. Investigators learned through a name check that there was an outstanding arrest warrant for Crisostomo. Investigators also observed a television/computer screen streaming a view of the four corners of defendant's residence.

Superior Court of Guam Probation Officers Roseanna Castro and Anthony Duenas conducted a 'probation search' of the defendant's bedroom. Several TFOs, who were part of the USMS team, assisted in the search of the defendant's bedroom. Officers seized what appeared to be methamphetamine and liquid methamphetamine from the defendant's bedroom. TFOs Jeremiah Cruz and Chris Dangan field-tested the suspected methamphetamine. The test resulted in a presumptive positive for the presence of methamphetamine. In addition to the methamphetamine, investigators recovered the following items:

- Two (2) rounds of ammunition;
- Three (3) digital scales;
- Several clear zip-lock baggies;
- Two (2) bullet proof vests;
- Five (5) pages of a Drug Enforcement Administration (DEA) report;
- One (1) iPhone;
- One (1) Samsung cell phone;
- Two (2) USB drives; and
- One (1) laptop computer.

The suspected methamphetamine was inventoried and sent to the DEA Southwest Laboratory located in Vista, California, where it was analyzed by Forensic Chemist Annecia T. Martin. The forensic chemist will testify that she analyzed and weighed the substances seized from the defendant's bedroom on March 10, 2015 and determined that the combined substances were 26.58 grams of actual methamphetamine.

The defendant was subsequently arrested pursuant to the Superior Court of Guam arrest warrant.

On June 12, 2015, the defendant and his attorney, Samuel Teker, went to the DEA office and met with DEA investigators about defendant's March 10, 2015 arrest. The defendant admitted that the methamphetamine found inside of his residence belonged to him. The defendant said he purchased the methamphetamine that was recovered from his residence, the morning of March 10, 2015. Defendant stated he purchased the methamphetamine from a heavy-set woman from Agat named Beverly, who he said usually stayed at hotels and drove rental cars. The defendant said on March 10, 2015, he texted Beverly and ordered seven (7) grams of methamphetamine. According to the defendant, he was 'just holding' the liquid methamphetamine recovered from his bedroom for Beverly. The defendant said he only uses methamphetamine and does not distribute it. When asked about the DEA reports recovered from his bedroom on March 10, 2015, the defendant said he received them from former GPD police officer Troy Morrison.

The defendant was provided discovery consisting of text messages from the defendant's cell phone seized pursuant to a federal search warrant. The Government is not going to use any of the text messages in its case-in-chief. However, the Government reserves the right to use said text messages to impeach the defendant should he testify or at a sentencing hearing.

1  **IV. Charges and Related Issues**

2  The defendant is charged with the offense of Possession with intent to Distribute

3  Methamphetamine.

4  **A. Possession with Intent to Distribute Methamphetamine**

5  Possession with Intent to Distribute is a violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C).

6  The elements of the offense are:

7  1. The defendant knowingly possessed methamphetamine hydrochloride; and

8  2. The defendant possessed it with the intent to distribute it to another person.

9  Ninth Circuit Manual of Model Criminal Jury Instructions No. 9.15 (2016).

10  **V. Anticipated Evidence**

11  What follows is a brief summary of the testimony of each witness, which includes the

12  main exhibits that each witness is expected to identify.

13  **A. Ricardo Leon Guerrero**

14  Ricardo Leon Guerrero is currently employed as a probation officer with the U.S.

15  Probation Office. At the time of the defendant's arrest, he was a Department of Corrections

16  parole officer assigned as a Task Force Officer (TFO) for the United States Marshals Service.

17  On March 10, 2015, TFO Leon Guerrero assembled the USMS Violent Reduction Operation

18  team to plan and execute a Superior Court of Guam arrest warrant issued for the defendant for

19  violating his probation. At approximately 6:30 a.m., TFO Leon Guerrero's team went to the

20  defendant's residence in Barrigada, Guam. Investigators took positions surrounding the

21  residence. Afterwards, TFO Leon Guerrero and Department of Corrections Officer Jimmy L.

22  Green approached the door and announced their presence. The defendant's grandfather, Mr.

23  Johnson, answered the door. TFO Leon Guerrero informed Mr. Johnson of a warrant for the

24

defendant's arrest and asked if Mr. Johnson knew if the defendant was at home. Mr. Johnson stated the defendant had been home the previous evening; however, he was uncertain whether or not the defendant was home that morning.

Officer Green asked Mr. Johnson for his consent to search the residence for the defendant, to which he consented. Investigators commenced searching the residence after receiving consent, and found one of the bedrooms locked. Superior Court of Guam Probation Officer Leo Diaz asked Mr. Johnson if he would consent to investigators breaching the locked bedroom door, to which Mr. Johnson consented. Upon entering the bedroom, investigators saw the defendant and Crisostomo. The defendant was arrested pursuant to the arrest warrant. Crisostomo was arrested after a name check revealed she had an outstanding arrest warrant.

TFO Leon Guerrero was present for the probation search of the defendant's bedroom.

### B. Jimmy L. Green

Jimmy Green is a Department of Corrections officer who was part of the Marshals' team that executed the arrest warrant at the defendant's residence on March 10, 2015. Officer Green approached the door of defendant's residence with TFO Leon Guerrero. Officer Green asked Mr. Johnson for consent to search the residence for the defendant.

### C. Leo Diaz

Leo Diaz is a Superior Court of Guam probation officer, who was a part of the Marshals' team that executed the arrest warrant at the defendant's residence on March 10, 2015. Officer Diaz obtained permission from Mr. Johnson to breach the defendant's bedroom door. Officer Diaz was present during the search of the defendant's bedroom.

### D. Roseanna Castro

Roseanna Castro is a Superior Court of Guam senior probation officer who was a part of

the Marshals' team that executed the arrest warrant at the defendant's residence on March 10, 2015. Officer Castro conducted a probation search of the defendant's bedroom, with the assistance of Superior Court of Guam probation officer Anthony Duenas, TFO Jeremiah Cruz, who took custody of the evidence, and TFO Jeffrey Palacios, who took photographs of the bedroom, seized evidence, and the areas inside and outside of the residence.

Officer Castro interviewed the defendant, who told her that he had used ice on March 9, 2015.

### E. Jeremiah Cruz

TFO Jeremiah Cruz is a Superior Court of Guam senior probation officer who is currently assigned to the DEA Task Force. TFO Cruz seized the methamphetamine that was located inside the defendant's bedroom. TFO Cruz field tested the methamphetamine that was in crystal like form. TFO Cruz observed TFO Chris Dangan field test the liquid methamphetamine recovered from the defendant's bedroom. Both samples tested presumptive positive for the presence of methamphetamine.

TFOs Cruz and Palacios transported the methamphetamine and non-drug evidentiary items from the defendant's bedroom to the DEA office and processed all the items into evidence. On March 10, 2015, TFOs Cruz and Palacios sent the methamphetamine seized from the defendant's residence to the DEA Southwest Laboratory in Vista, California, for analysis by a DEA forensic chemist.

On June 12, 2015, TFOs Cruz and Palacios along with DEA Special Agent (S/A) Kirk Williamson met with the defendant and his attorney, Sam Teker, at the DEA office to discuss the March 10, 2015 arrest of the defendant and the search of the defendant's bedroom. The defendant made the following non-verbatim statement: the methamphetamine recovered from his

bedroom belonged to him. He purchased the methamphetamine from a heavy-set woman from Agat named Beverly. Beverly usually stayed in hotels and drove rental cars. On the morning of his arrest, the defendant ordered seven (7) grams of methamphetamine by text message. He usually pays $500 per gram. The most he has purchased from Beverly was ten (10) grams. The defendant said the liquid methamphetamine recovered from his bedroom belonged to Beverly. He said he was holding the liquid methamphetamine for Beverly because she was afraid that she would get pulled over by the police. The defendant said he only uses methamphetamine and does not distribute it.

The defendant said he received the DEA reports from former GPD police officer Troy Morrison two years prior to the defendant's arrest. The defendant said Morrison gave him the reports to get on his (defendant's) good side and because he had a video of Morrison smoking methamphetamine. The defendant and his attorney left the DEA office after the interview.

### F. Annecia T. Martin

Ms. Martin is a DEA forensic chemist. She analyzed the methamphetamine seized from the defendant's residence on March 10, 2015. Ms. Martin will testify as to her knowledge, training, education and skills in the fields of chemistry and forensic chemistry.  She will testify about how cases at the DEA laboratory are assigned to chemists, how cross-contamination is prevented, and how the chain of custody is kept intact. Ms. Martin will describe how she conducts qualitative and quantitative analysis on exhibits submitted for substance identification. Her testimony will include the instruments used to test the exhibits.

The chemist will testify that she has provided expert testimony in chemistry and forensic chemistry in Federal District Courts located in Arizona, California and Pennsylvania. She has also provided expert testimony in state courts in Arizona, California and Pennsylvania.

Ms. Martin will testify that the drugs seized from the defendant's bedroom on March 10, 2015 were in fact methamphetamine hydrochloride and that the total amount of pure substance seized from the defendant's residence was approximately 26.58 grams.

The Government filed its notice of intent to offer an expert witness pursuant to Fed. R. Crim. P. 16(a)(1)(G). (ECF No. 8).

## VI. Evidentiary and Other Trial Issues

### A. Defendant's Statements

The Government intends to introduce the defendant's June 12, 2015, statements in its case-in-chief. The statements are admissible pursuant to Fed. R. Evid. 801(d)(2) and 804(b)(2). Rule 801 articulates that statements made by the opposing party – in the present case the defendant – are not hearsay. Further, the defendant's June 12, 2015 statement was made by the defendant in his individual capacity, which is a requirement for admissibility pursuant to Rule 801.

The defendant's statement on June 12, 2015 is also admissible pursuant to Rule 804(b)(2) as an admission against interest. In this case, the defendant is unavailable to the government as a witness because he has a Constitutional right not to testify at trial. Because defendant is exempted from testifying based on the Fifth Amendment's self-incrimination clause, he meets the unavailability portion of Rule 804(a). Finally, the defendant's statement is against his proprietary interest or his freedom. Further, the defendant's statement is further supported by corroborating circumstances (the methamphetamine recovered from within the defendant's locked bedroom) which clearly indicate his statements' truthfulness.

//

//

### B. Photographs

The Government intends to offer photographs into evidence. Under Rule 901 of the Federal Rules of Evidence, a witness familiar with a scene or object may provide a sufficient foundation for admission of a photograph by testifying that it fairly and accurately depicts the scene or the object at the relevant time. *See United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980); *cert. denied sub nom. Cox v. United States*, 447 U.S. 908 (1980). *See also People of the Territory of Guam v. Ojeda*, 758 F.2d 403 (9th Cir. 1985). The photographs in this case include photographs of the defendant, and items seized from the defendant's bedroom.

### C. Duplicates

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) the circumstances make it unfair to admit the duplicate instead of the original. *See* Fed. R. Evid. 1003. The party opposing admission on Rule 1003 grounds has the burden of producing evidence to trigger one of these exceptions. *See*, *e.g.*, *United States v. Stewart*, 420 F.3d 1007, 1021 n.13 (9th Cir. 2005); *see also United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (burden of challenging admissibility of duplicate rests with the party against whom it is offered); *United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985) (same); *United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980).

### D. Chain of Custody

The Government's position is that the chain of custody in this case is sufficient to introduce the methamphetamine into evidence. The Ninth Circuit has held that the prosecution may establish chain of custody to lay a proper foundation for admission of physical evidence if it is able to prove that a reasonable juror could find that the evidence is in substantially the same condition as when seized and if there is a reasonable probability the evidence has not been

changed in important aspects. Merely raising the possibility of tampering is not enough to render evidence inadmissible. Finally, a defect in the chain of custody goes to the weight not admissibility. *United States v. Solorio*, 669 F.3d 943 (9th Cir. 2012); *United States v. Harrington*, 923 F.2d 1371 (9th Cir. 1991); *See generally* Fed. R. Evid. 901(a).

### E. Expert Witnesses

The Government intends to call a DEA forensic chemist as an expert in chemistry and forensic chemistry. The purpose of the forensic chemist's testimony will be to establish that the substance seized from the defendant's bedroom is methamphetamine, that its aggregate weight is approximately 26.58 grams, and the purity levels of the methamphetamine and liquid methamphetamine were 98.3% and 73.3%, respectively. Rule 702 of the Federal Rules of Evidence provides that an expert opinion is admissible if the witness is sufficiently qualified as an expert by knowledge, skill, experience, training or education; that the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principals and methods and the expert has reliably applied the relevant principles.

An expert may testify in the form of an opinion or otherwise if his or her specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993). Further, admissibility of expert opinion turns on preliminary questions of law determined by the judge, to include if the testimony is relevant and reliable, and if its probative value is substantially outweighed by risk of confusion of issues or undue consumption of time. *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000). In this case, the forensic chemist will testify she is a forensic chemist employed by the DEA Laboratory in Vista, California. The forensic chemist will testify about her education,

certifications, professional affiliations, honors received and professional experience.  The forensic chemist will further testify if her forensic discipline is in any other area of drug chemistry. The forensic chemist will further testify if she has been qualified an expert witness in forensic chemistry in Federal District Court and/or state courts. The Government will ask the Court to find, based on the forensic chemist's knowledge, skills and training, that she is qualified not only as an expert in chemistry and forensic chemistry, but also that she is qualified to give an expert opinion about the substances seized in this case (methamphetamine), its quantity and purity.

**VII.     Conclusion**

This has been an outline of the case and a discussion of possible issues at trial.  Since issues not covered here might come up at trial, the United States would respectfully seek leave to submit further briefs as necessary to assist the Court.

DATED this 2nd day of May, 2017.

                                            SHAWN N. ANDERSON
                                            Acting United States Attorney
                                            Districts of Guam and the NMI

                                By:    /s/ Clyde Lemons, Jr.
                                         CLYDE LEMONS, JR.
                                         Assistant U.S. Attorney